| 60 | 97 |
| 72 | 710 |

### RICHARDSON & MAY *v.* STAPLETON & BROTHER.

ASSIGNMENT.   *Deed fraudulent upon its face.   Direction to sell choses in action.   Attachment.*

S. & Bro., having become insolvent, executed a deed of assignment to W., as trustee for their creditors, who were ranged in two classes, designated "No. 1," and "No. 2," the former being preferred.   The property conveyed consisted of a stock of goods valued at $9,000, notes, accounts, and deeds of trust valued at $7,000, a horse and buggy at $150, and $24 in cash.   The deed contained this provision: "If at the end of nine months there shall remain any of said goods, wares, and merchandise, or other property of said parties [the grantors] remaining in his [the trustee's] hands unsold, and there be debts still unpaid and due by said parties of the first part, said party of the second part shall proceed to sell said remaining property and evidences of debt to the highest bidder for cash, after giving ten days' notice of such sale by posting in three or more public places," etc.   R. & M., creditors, being in class No. 2 of the assignment, sued out an attachment against S. & Bro., a few hours after the execution of the deed of assignment.   The attachment was based upon the ground, amongst others, that the defendants "had assigned or disposed of, or were about to assign, or dispose of, their property or rights in action, or some part thereof, with intent to defraud their creditors."   The defendants pleaded in abatement, and upon the trial the deed of assignment was adduced in evidence, and the plaintiffs asked the court to instruct the jury that it was void upon its face; but the court refused to give the instruction.   *Held*, that the right of the creditors to subject the property of the assignors to their demands by legal process, or to have it surrendered to them without limitations or restrictions prejudicial to their interests, was infringed by the above quoted clause of the deed of assignment, which requires the assignee to sell the choses in action before the lapse of time sufficient to enable him to collect them by legal process, as the sale of such property

must result in the loss of a part of their value, thereby withdrawing the property, to the extent of such loss, from the creditors. The court below should have declared the deed void, and instructed the jury to that effect.

APPEAL from the Circuit Court of Hinds County.

Hon. S. S. CALHOON, Judge.

The case is sufficiently stated in the opinion of the court.

*Nugent & McWillie*, for the appellants.

In the case of *Anderson* v. *Sachs*, 59 Miss. 111, the assignment gave to the assignee power to collect or sell at public or private sale the notes and accounts assigned; and, on this point, the court say : "The authority given to the trustee to sell the choses in action, while unusual, does not inevitably or certainly tend to the injury of creditors. On the contrary, it may be that under some circumstances it would be of decided advantage that such course should be pursued." It was objected that the trustees, protected by this authority, might sacrifice the choses in action and greatly impair the value of the trust estate; but the answer of the court was that no power to administer the trusts can be given which may not be abused by the faithless, and that a fraudulent abuse of the power would render the trustee personally liable to creditors, while they are always subject to the control of the Chancery Court. The power thus given was said to be analogous to, and not more susceptible of, abuse than the power to compound with debtors, which has been upheld by the courts.

In that case, however, there was the grant simply of a power to sell choses in action in the alternate, which could only be exercised in good faith and to promote the interests of creditors. This power, like all other usual powers granted in assignments, was subject, in its exercise, to the control and supervision of the Court of Chancery. If the trustee should undertake to execute the power in a case where the choses in action were clearly collectible and thereby endanger them, or if he attempted to sell at an inopportune time or place, the Court of Chancery could interpose. It would be an argument against this privilege to say that the trustee became, or would

become, personally liable, for this personal liability would amount to nothing in nine cases out of ten. As suggested by this court, the trustee in *Anderson* v. *Sachs* took all his powers "subject to the control of the Chancery Court," and thus saved the unusual power granted by the assignor. Indeed, without the express power the court would, in a proper case, grant the power to sell or compound debts, and this was the extent to which the assignor went in the case cited. The trustee was to collect first; on failure to collect he was clothed with power to sell. He was not restrained in any way as to the power for collecting, or the time within which he was to collect debts. That was left to his best judgment and his good faith, — subject to the supervisory control of the courts. The assignor knew that it became the trustee's duty, as soon as he accepted the trust, to use all necessary means, by action or otherwise, to realize the debts, and that if a debt was lost by his neglect of duty, when the debtor had sufficient property to pay, he would be personally liable for the loss, although he may have acted without any improper motive. *Royall's Admr.* v. *McKenze*, 25 Ala. 363. He knew that his trustee, if he discharged his duty, would begin and prosecute all necessary suits, and institute all other proceedings necessary for the collection of all outstanding claims. *Irwin* v. *Keen*, 3 Whart. 347 ; *Ogden* v. *Prentice*, 33 Barb. 161. Presupposing that that this would be done, he gave the authority to sell choses in action ; and he knew that any abuse of even this power would render the assignee personally liable. This case, therefore, only anticipated what would have been done by the Chancery Court in the exercise of its undoubted jurisdiction, whenever the proper showing could be made, and does not apply to the case at bar. The court very well saw the unusual power granted, thus considered, did not inevitably or certainly tend to the injury of creditors, — and, in reply to the suggestion that choses in action might be sacrificed, said, that there was a remedy open to the creditors, by an appeal to the Chancery Court, or a personal action against the assignee.

But we think the reasoning of the court in *Anderson* v. *Sachs*, and the conclusions from that reasoning, necessarily upset the argument in this case. The provision in the bankrupt law on this subject is : " The assignee may sell and assign, under the direction of the court, and in such manner as the court shall order, any outstanding claims or other property in his hands, due or belonging to the estate, which cannot be collected by him or received without unreasonable or inconvenient delay or expense." Rev. Stats. U. S., sect. 5064. Here, then, is a practical exemplification of the views of the Congress in reference to bankruptcy proceedings, and a perfect illustration of what every man knows to be necessary to prevent frauds. And yet, it is part of the history of the country that, under this power so carefully guarded, creditors are daily swindled and insolvents enriched by the sale of what were supposed to be uncollectible, but which were really collectible, claims.

Our own statute authorizes the Chancery Court, by decree, to authorize any executor or administrator to sell or compromise any claims due the estate which cannot readily be collected, if the executor or administrator shall petition for that purpose, and shall show that such sale or compromise will promote the interests of the estate ; but no such order of sale shall be made until twelve months have elapsed from the grant of letters. And if a sale be ordered, it shall be made at the court-house door, for cash, to the highest bidder ; but the executor or administrator shall first give twenty days' notice of the time and place of sale, by advertising in a newspaper printed in the county, if there be such, but if not, then in a newspaper published in some convenient county. Code 1880, sect. 2065 ; Code 1857, p. 447, Art. XCV. ; Code 1871, sect. 1155.

In 1844, the High Court of Errors and Appeals decided that the executor might release or compromise a debt, and if, in so doing, he appears to have acted for the benefit or the estate, he will not be chargeable with it as assets. *Berry* v. *Parker*, 3 Smed. & M. 639 ; *Bailey* v. *Dilworth*, 10 Smed. & M.

409 (1848) ; *Long* v. *Shackleford*, 25 Miss. 566 ; *Gulledge* v. *Berry*, 31 Miss. 348 ; 43 Miss. 517.   But he can have no power to sell collectible assets, and no power to sell apparently uncollectible assets, without proceeding in the mode pointed out by statute.

If we recur to sect. 2065 of the Code of 1880 it will be seen that twelve months must have elapsed before any order of sale could be made, and that twenty days' notice in a newspaper must be given before the assets can be offered for sale.   Here, then, we have the provisions of our own statute on this subject, and the bankrupt law, both of which indicate quite plainly the view taken by the State and national Legislatures on this very important subject, and the policy of our State, at least, is never to give to trustees for creditors the original right to sell choses in action.   The twelve months' time was specified, because within that time it was supposed all collectible debts could be recovered ; the twenty days' notice in a newspaper, because of the publicity given to the matter, and the beneficent result to flow from it.   There was in the mind of the law-giver the thought and knowledge that sales of accounts and notes in this State, where the anti-commercial law rule prevails, would, under ordinary circumstances, realize nothing of moment ; and even in the case of officers, bonded and sworn, it was deemed necessary to leave it wholly to the court to say whether such sales should be made or not, and to fix the character of the notice for sale that should be given.   The additional fact may be mentioned that as to assignees in bankruptcy and executors, the general public would have the right of access to books and papers, so as to determine the approximate value of the choses in action offered for sale.   It lends some weight to these suggestions that, at common law, choses in action are not assignable at all, and only are made so by our statute.

We presume that no one at all familiar with the daily transactions of life can doubt but that the inevitable or certain result of a wholesale disposition at public auction, on ten days' notice, of choses in action, accounts and notes, whether due or

not, would be the injury of creditors. If that be the result, we think the case of *Anderson* v. *Sachs* condemns, by an irresistible inference, the assignment made by Stapleton & Brother. The court cannot shut its eyes to the fact that, as a rule, assignees are the intimate friends of the assignors, and when the assignor's wife is the principal preferred creditor, it can hardly need argument to demonstrate that she alone would have the proper appreciation of values at any bidding made under the assignment. The outside world would be in the dark, without chart or compass, and the courts would be wholly powerless to arrest the sale without infringing upon the very deed under which the assignee was acting, by making a wholly different contract for the parties. That cannot be done.

But it may be urged here that many of the claims, if due, might be within the jurisdiction of a magistrate, and the time allowed would suffice. To this, we answer that the court must consider the assignment as if the claims were equally within the exclusive jurisdiction of the Circuit Court. Besides, if the debts were of $150 or less, it could make no difference. Had the assignee sued and gotten judgment, an appeal could have been taken to the Circuit Court, which could not have been heard or decided before the sale day appointed by the assignor; and with a pending appeal, in a good case, the trustee would have been forced to sell, though he may have known that the debt was perfectly good, and best interests of the creditors were being sacrificed. If, in the exercise of his power, he had sued in the Circuit Court, the very same result would follow; for, before a plea of *non assumpsit* could be filed, he would be compelled to sell the assets at public auction. Certainly, the children of this generation, who are as wise as the children of the light, in all that works for their interest, would not be slow to take in the situation, refuse to pay their debts, and work to postpone collections for the day of general deliverance. Thus we reduce the whole argument to this: Stapleton makes an assignment, providing for the collection of

his debts, giving no sort of discretion to his assignees, and requiring them, at the end of nine months, to sell these debts, whether due or not, at public auction, on ten days' notice. He thus prevents the possibility of consummating the collection of these debts otherwise than by a sale, and directly does that which must result in a sale of every account and note he held, due or not due, good, bad, and indifferent. In effect, while enjoining upon his trustees to sell, he says to his debtor friends, "Don't pay, and you can buy in your debt for a song a few months hence, or my wife will, and make terms favorable to you." He, therefore, summarily cuts off all power to sue for or compound any debt, and checks settlements in any way other than that which conforms to his plan of operations.

It is hardly necessary to say that a man cannot do that indirectly which the law prohibits to be done directly. If the assignment had prohibited the assignee from suing at all, or compounding any debt, there can be no doubt that it would be void, for many reasons. What difference does it make, when the necessary result of its provisions is the same? It seems to us to be very apparent that Stapleton intended this very thing, — the logical result of his assignment, — and that his wife and Carson should buy in every asset he had, for a song, and thus become owners of his property and business.

*Buchanan & Miller*, for the appellees.

On the provision of the assignment, directing a sale at auction of the choses in action, remaining uncollected, at the end of nine months, we ask leave to say : —

That authority to sell choses in action, at auction, may be given by the assignment, is unquestioned. *Anderson* v. *Sachs*, 59 Miss. 111; Bump's Fr. Conv. (2d ed.), 412. The time for making the sale may be fixed by the assignment, if reasonable. What would be a reasonable time, depends upon the nature and character of the property assigned, and the time necessary to collect and convert it into money. What would be reasonable in one case might be utterly unreasonable in another. Bump's Fr. Conv. (2d ed.), 400,

401; Burrill on Ass. (2d ed.), 200.    The question of the reasonableness of the time in this case was settled by the verdict of the jury, who had, in evidence before them, the facts and circumstances which revealed the nature and character of the choses in action — whether within magistrate's or circuit court jurisdiction — whether secured by deeds of trust or not, and the residence of the parties from whom were due.    With all the facts and circumstances of the case before them, and considering the provisions of the assignment in connection with the facts and circumstances, as they were directed to do by the instructions of the court, as given in the eighth charge for the plaintiffs, the jury found the assignment to be not fraudulent in fact, and that the time prescribed in this case was reasonable.    Counsel cannot assume before this court that the choses in action assigned are collectible in the Hinds County courts — that they are within the jurisdiction of the Circuit Court, or, if within magistrate's jurisdiction, that appeals would be taken to the Circuit Court of Hinds County, and on this assumption argue that the choses in action could not be collected by suit before the time fixed for the sale, and that the assignment cuts off all power to sue or collect in any way other than by sale at the end of nine months.

*Shelton & Shelton*, on the same side.

When does the language of an assignment, such as the one in this case, make it void on its face for fraud?    I answer never, if it be possible by proof to show that it is not fraudulent against creditors; hence, if the suspected clause may or may not be fraudulent under outside facts, it does not make the act fraudulent *per se*, or on its face.    Such clauses may arouse suspicion; may, if unexplained, be enough to sustain a charge of fraudulent intent, just as a fact proved, and unexplained might do; but these do not make the assignment void on its face, for proof may show them to be consistent with fair dealing to the creditors.    In contrast to these are certain other clauses that no proof can show to be consistent with fair deal-ing to the creditors; such are, reservations to the debtor

adversely to the creditors, the debtor's right to continue in possession and use for a long time before sale, his right to continue trade on the goods conveyed, etc. No proof could show such clauses to be consistent with fair dealing to the creditors. Clauses of the former kind may be evidence of fraudulant intent, but counter-proof may show them to be reasonable and just to creditors. Then the court or jury wants the outside facts; then the deed is not fraudulent on its face. Clauses of the latter kind cannot by proof be reconciled with reasonable and just dealing with creditors. Then the deed is fraudulent on its face. The former are *symptoms* of a fatal malady, which a full diagnosis may show not to exist; the latter is the fatal malady itself. This doctrine is well sustained by authority, and authority brings it directly to the point in this case, for authority shows directly that reasonableness of time given by the first deed for final sale and closing the trust comes within the former class, and not within the latter. Burrill on Ass., p. 285., sects. 214, 215; p. 478, sect. 345; Bump's Fr. Conv. 401, 402; 59 Miss. 99. Our own decisions hold that a clause conferring on the trustee power to sell such choses in action at auction, comes within the former kind and not within the latter. 59 Miss. 113.

The only inquiry then is: could proof show that an auction sale of the remaining debts after nine months' diligent effort to collect,— and the court cannot presume that the trustee would not do his duty,— was fair dealing with the creditors. The inquiry turns on time alone. Burrell and Bump, *ubi supra*, show that such a limitation is of the former kind and not of the latter — and does not render the deed void on its face. So far from this case being suspected on the nine months' time, it develops the soundness of the doctrine. The assignment conveys about $9,000 of goods, and about $7,000 of accounts, notes, and agricultural trust-deeds; in the Circuit Court, the details and character of these assets of both classes were before the court and jury; they are not here because

plaintiff's instructions, asked and refused, did not involve them, and therefore plaintiffs did not put them in their bill of exceptions. The assignment creates the following mode of converting those assets into money for payment of debts : —

The trustee, with diligence, to sell the assets for cash, at public auction or private sale, as he may think most beneficial to the creditors ; as soon as practicable collect and recover all debts ; keep an account of cash receipts from sales and collections ; from those receipts, without delay, pay costs and debts. Such is the line of the trustee's duty ; collaterally, he is told, " that if he should deem it for the best interest of the creditors to sell the goods at retail, then he shall pay proceeds of sales and collections to creditors at the end of every thirty days ;" and further, that if he should adopt this latter plan, pursue it for nine months, and at the end of that time find himself with a remnant of goods unsold and debts unpaid, he will sell the remnants of both goods and debts (after due notice) at auction, and pay proceeds of such sale to the creditors. To epitomize the plan presented, it is, promptly sell the goods for cash, at public auction or private sale, as you may think is best for the creditors ; collect and recover (judgment, I suppose) the debts as rapidly as possible ; if you deem it for the best interest of creditors to sell the goods at retail, do it. In the meantime, collect and recover as rapidly as possible, pay the creditors as fast as you get the money from either source. If this lasts nine months and a remnant of goods and debts still remain, close the trust by sale at auction for cash, and paying proceeds to creditors. Observe that to the end of nine months the trustee's duty is diligence in collecting debts, selling goods, and paying over proceeds ; he is given during that time discretion, controlled only by the interest of creditors. He could close the trust any day that he could make it for their interest. Plainly, the policy of the assignment is to have the remnants of both goods and debts reduced to nothing, or as diminutive a value as possible, then sell them and close the trust. It will take very cogent

logic to convince the court that the plan prescribed for the trustee could not, by proof, be shown to be consistent with fair dealing with the creditors. The objection is, that notes, accounts, and trust-deeds may be a part of the remnant, which at the end of nine months, may be sold at auction; that an auction sale is all right as to both goods and choses in action, and the nine months is all right as to goods, but so wrong as to the remnant of the choses in action as to make the trust-deed, in everything else perfectly sound, void on its face, because no possible proof could show that nine months' limitation to be consistent with fair dealing to the creditors. Now I think that it is perfectly impossible to form such a conclusion on the face of the deed, just as impossible as to the debts as to the goods. The goods might be perishable in a month; if, therefore, a month's limitation for the auction had been prescribed as to them, it would be impossible to say on the face of the deed, that it was unfair to the creditors. As to the debts, until the court and jury know the general character and amount of each debt, how many of them could probably be collected by suit, how many not, in what courts suits must be brought, the probability that proceeds of collections forced would remunerate expenses thereon, and other items bearing on each particular case, it would be improbable for either to say that the limitation prescribed was unfair dealing with the creditors; in some cases of valuable and solvent debts, five or six years might not be too long to keep up the trust, in others of insignificant and insolvent debts, ten days is long enough; in others of small debts, some solvent and some insolvent, it is purely a matter of judgment in each case dependent on the extrinsic facts; the same provision might in one deed make that deed perfectly void for fraud in fact, and in another leave it perfectly valid because there was no fraud in fact. The extrinsic facts proved would contrast the effect of the same provision in the two deeds. For example, suppose that of a hundred choses in action so conveyed, there was not a reliable debt amongst them, would it be fair dealing with the cred-

itors to prescribe or permit that as to those debts the trust should remain for years, suit be brought on them, and costs, expenses, trustee's salary, and lawyer's fees be paid from any trust-money on hand? Which would be more faithful to creditors, for the assignor, who knows all the extrinsic facts, to prescribe a rule fair in his judgment, or clothe a trustee of his own selection with power to protract the trust expenses, the trust values, and his salary for years? Would it be any more fair dealing with the creditors to burthen the money on hand with numerous suits producing nothing, but squandering the fund on hand on the trustee, his lawyer, and the officers of the courts?

Now, I use these incisive points to show that the court cannot say on the face of the deed that the nine months' clause was not a wise provision in favor of the creditors, much less can the court say on its face, that it is a fraudulent provision against their interest. Without that the court cannot pronounce the deed fraudulent on its face.

Under our statute a purchaser of any of the choses in action at such auction sale, would take as perfect legal title as he would to other personal property; for choses in action, like all other personal property, may be assigned by trust-deed to secure creditors. Code 1880, sect. 1507.

Burrill and Bump, each in his statement of what is so assignable for that purpose, mentions mortgages, debts, choses in action, generally, including promissory notes, bills of exchange, bonds, book accounts, insurance policies, judgments, executions, decrees, etc., all under the denomination of personal property. Burrill on Ass., pp. 129, 130, sects. 100, 101. Bump's Fr. Conv. 236, and authorities.

Both Burrell and Bump develope the principles which govern such conveyances of personal property for the benefit of creditors, when fraudulent on their faces and when not, sanction the direction of such auction sales of personal property, and as to time of such sales of personal property, sanction both more and less than nine months. True, that in defining these

principles neither mentions choses in action specially as controlled by them in reference to time, but what is more important is that neither makes exceptions of them, neither even hints that there is a distinction between them and other personal property in that respect. The truth is that on a question of fraud there is no necessity for or propriety in such a distinction, unless outside circumstances imperatively demand it in the particular trust-deed.

COOPER, J., delivered the opinion of the court.

The appellants, on the second day of February, 1882, sued out an attachment against the estate of the defendants, who were partners and merchants in the city of Jackson.

The grounds for attachment, as stated in the affidavit of the plaintiffs, were : —

1. That the defendants had property, or rights in action, which they concealed, and unjustly refused to apply to the payment of their debts.

2. That they had assigned, or disposed of, or were about to assign or dispose of, their property, or rights in action, or some part thereof, with the intent to defraud their creditors.

3. That they had converted, or were about to convert, their property into money, or evidences of debt, with intent to place it beyond the reach of their creditors.

4. That they fraudulently contracted the debt, or incurred the obligation for which suit was about to be brought.

The attachment was levied upon the stock of goods which had been in the possession of the defendants, and composed their stock in trade previous to the assignment thereof hereinafter mentioned.

The defendants, by proper plea, traversed the causes assigned for suing out the attachment.

On these issues a trial was had, resulting in a verdict and judgment for the defendants, from which judgment this appeal is prosecuted. The case is presented here on six special bills of exceptions taken to the action of the court on the trial of the

cause ; we have found it necessary only to pass upon the first, which was taken upon the refusal of the court to instruct the jury, that a deed of assignment executed by the defendants on the day on which the attachment was sued out, and a few hours before its issuance, was void on its face.    This deed recited that Stapleton & Brother were at that time indebted to divers persons in divers sums, which they were then unable to pay, but were desirous of providing for their payment by a conveyance of all their estate not exempt by law.    It then conveyed to Wm. M. Watson, as trustee, "all the stock of goods, wares and merchandize now in store, accounts, promissory notes, debts, deeds of trust, choses in action, property and effects of every description belonging to said parties of the first part, or either of them, or in which they have any right or interest, now due or payable, or to become due or payable, except what are exempt to them by the laws of the State of Mississippi."    A schedule marked "A," and referred to in the deed, was as follows : —

" Schedule A to accompany and form a part of assignment made by Stapleton & Bro., February 2, 1882 : —

### *Assets.*

Stock of goods, wares, and merchandize, store fixtures,
    etc., about . . . . . . . . . . . . . . . $9,000 00
Notes, open accounts, deeds of trust, etc., about . . 7,000 00
1 horse and buggy . . . . . . . . . . . . . . 150 00
Cash on hand . . . . . . . . . . . . . . . 24 25 "

After providing in the usual terms for the sale of the goods and the collection of the choses in action and declaring certain preferences, the following provision was made :    " If at the end of nine months, there shall remain any of said goods, wares, and merchandize, or other property of said parties remaining in his hands unsold, and there be debts still unpaid and due by said parties of the first part, said party of the second part shall proceed to sell said remaining property and evidences of debt to the highest bidder, for cash, after giving

ten days' notice of such sale by posting in three or more public places in the city of Jackson." It is this clause, and especially that portion of it which requires the sale of the evidences of debt to which objection is made.

It is said that deeds of assignment for the benefit of creditors are almost peculiar to America, and that when first introduced their validity was questioned under all circumstances because, they withdrew the property of the debtor from subjection to the claims of creditors by ordinary legal process, and thus delayed them during the time in which the deed was operative; but as the delay was but a necessary incident to the exercise of a legal right by the debtor, the right of appropriating his property to the payment of his debts, their validity, when, unquestioned for other causes, soon became conceded.

The objection thus originally interposed to these instruments, and the reply which was made to it, furnish the legal test for the solution of all questions touching their validity.

The debtor, as owner of his property, retains, though debtor, the power of its disposition. But it is a power restricted by his relation as debtor, and exercisable only for the purpose of devoting the property or its proceeds to the payment of his debts. A valid assignment for the benefit of creditors is a devotion of it to this purpose. If it is more or less than this, it is not an assignment valid because of the rightful exercise of the assignor's power as owner, but valid only by and because of the assent of his creditors to it.

Successful attacks upon these instruments are based either upon the fact that they are made with a fraudulent, or convinous, intent on the part of the assignor, or that their tendency and effect is violative of the rights of creditors. Those of the first class are said to be fraudulent in fact — those of the other fraudulent in law. In truth, they are both fraudulent in fact, but in one class the fact is to be found by the jury upon consideration of all the circumstances tending to prove

the intent of the assignor ; in the other, it is found by the court by a construction of the instrument alone.

It is claimed by the appellants that the court below should have declared the deed under consideration to be void upon its face. In all cases of assignments for the benefit of cred- itors, it is necessary that the property conveyed shall be con- verted into money for the payment of the debts due by the assignor, and within certain limits, not well defined, he has been permitted to direct the time and manner in which this shall be done. It is necessary, however, that in doing so he shall keep in view the interests only of the creditors, not considering his own. He is not only prohibited from provid- ing for a benefit to himself, but he may not impress his will upon the future management of the trust-estate to the injury of his creditors. Whatever provisions or limitations in a deed lead to the deprivation of their right to appropriate the property to their demands are unauthorized by law, and taint, with their illegality, the whole instrument of which they are a part.

It must be borne in mind that the trustee in a deed of as- signment takes the assigned property impressed with all the limitations appearing on its face. It is the measure of his right, his power, and his duties, and both he and the creditors who claim under it must abide by the terms it imposes. No court has the power to relieve him from compliance with it, nor to substitute its judgment for that of the assignor. To change its provisions is to create a new, not to execute the original, trust. Creditors must attack and overthrow it, or abide by it as written.

The assignor had the legal right to execute a deed devoting his property to the payment of his debts. It is the right to thus devote it that is the foundation of the right to convey. More correctly speaking, the law required this devotion, but permitted him to make it. On the other hand, his creditors were by law entitled to subject it to their demands by legal process, or to have it surrendered by the debtor without

limitations or restrictions injurious to them.   Was this done by the deed?

It conveyed to the trustee a stock of goods of the estimated value of $9,000, and choses in action amounting to the sum of $7,000.   In considering the validity of this deed, in determining whether its provisions ordinarily and naturally would subserve or subvert the right of creditors, we must consider the character of the property assigned, the habits of man in dealing with it, the manner in which it is ordinarily converted into money.   Merchandize, we know, is the subject of purchase and sale throughout the commercial world.   It has a known, though fluctuating value, and is universally converted into money by sale.   Choses in action have no entity. They are not ordinarily converted into money by sale, but by collection.   Their value is fixed by the right to enforce their payment through the courts, and by the habits, character, and solvency of the debtor.   Men ordinarily put their goods into market, their choses in action in the courts.   Sales of such property are unusual, resorted to only under peculiar circumstances, and when resorted to ordinarily, if not universally, resulting in loss to the seller.   For this reason, though they may by our statute be seized under execution, they are not vendible thereunder, as is other property, but the officer is required to summon the debtor to answer as garnishee.   In *Anderson* v. *Sachs*, 59 Miss. 111, we held that a deed was not avoided by a grant of power to the trustee to sell choses in action, but there the power conferred was to be exercised, or not, by the trustee at his discretion. If fairly and honestly exercised, it would not, and could not, result in injury to creditors, because the trustee might, and it was his duty to, collect such of the choses in action as were collectible.   It was his duty to acquaint himself with the circumstances of the debtors, and if upon offering the debts for sale a sum approximating their value was not bid, it would have been his duty to decline the offer.   To a suggestion that the power was a dangerous one

60 MISS.—8

and might be abused, we replied that the creditors had the same safeguards against the abuse of that power that they had against the abuse of other powers necessary to be conferred, *i.e.*, to restrain the trustee through the Court of Chancery, and to hold him personally liable for its unwarranted exercise.

The provision here is widely different. It is not a power to be exercised by the trustee if deemed by him beneficial; but he is absolutely and unconditionally required, after the expiration of the time named, to sell. In addition to this, the time in which collections might be made was limited to nine months, and this was insufficient to enable him to collect the choses in action by legal proceedings. It is said that we cannot know that the claims were not all secured by mortgages or within the jurisdiction of justices of the peace, in which event, it is said, they might have been collected by suit, if collectible, within the time prescribed. But this is not shown by the deed, nor does anything appear from which such facts might be fairly inferred. We are impressed with the force of the suggestion made by the counsel for appellants, that this provision in the deed naturally operates as an invitation and temptation to the debtors of the assignor to defer the payment of their debts with the expectation of buying them at the forced sale at less than their amounts.

We are of opinion that this clause of the deed, operating before the lapse of time sufficient to enable the trustee to collect the choses in action by suits at law would, in by far the greater number of cases, result in their sacrifice. That thereby, and to the extent of the loss so occurring, the property assigned would be withdrawn from the creditors of the assignors; that this is an unlawful infringement of their rights by the assignors and avoided the deed.

It follows that the court erred in refusing the instruction asked, for which reason the judgment is reversed and cause remanded.